UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL CAMACHO (#2014-1023218),<br><br>      Plaintiff,<br><br>      v.<br><br>THOMAS J. DART,<br><br>      Defendant. | No. 15 C 3396<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Defendant's Motion for Ruling on Exhaustion Issue [32] is granted in part and denied in part. Because Plaintiff did not file any grievances relating to conditions in Division 2, Plaintiff's claim that he was subjected to unconstitutional conditions in that Division is dismissed without prejudice. However, as to Plaintiff's claim that he was subjected to unconstitutional conditions in Division 6, the record shows that Plaintiff exhausted his administrative remedies by following the procedures provided in the Inmate Handbook for grieving unsafe or unclean living conditions. Therefore, Plaintiff's claims as to Division 6 will proceed.

### I. BACKGROUND

Plaintiff Miguel Camacho, an inmate confined at the Cook County Jail, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to unconstitutional conditions of confinement in the Jail. Now before the Court is Defendant's Motion for Ruling on Exhaustion Issue, in which Sheriff Dart

argues that this case should be dismissed for Plaintiff's failure to exhaust his administrative remedies.

Plaintiff's Complaint alleges that while he was housed in Division 2 of the Jail, from October 23 through December 26, 2014, he was subjected to conditions including a lack of heat, the presence of mice, spiders, and water bugs, spots of mold on the walls, and water leaks in the dorm and bathroom. (Dkt. 10 (Compl.) at 4). He further alleges that sometimes the faucets did not work, so inmates had to get their water from the slop sink, where workers dumped used mop water. (*Id.*).

Plaintiff alleges that similar unconstitutional conditions existed in Division 6 from December 26, 2014, to the time of the filing of this Complaint, approximately April 9, 2015. (Compl. 5–6). Additionally, Plaintiff alleges that mice came into his cell from the day room. (*Id.* 5). He states that the hot water in the shower was so hot that inmates could not stand under the water, that no cleaning supplies were provided for cells, and that there was mold and a foul smell coming from the vents. (*Id.* 5–6).

Defendant moves to dismiss this lawsuit on the basis that Plaintiff did not file any grievances over the conditions in Division 2, and did not fully exhaust grievances he filed as to the conditions in Division 6.

Plaintiff attached several grievance forms to his Complaint. (Compl. 8–14). Three of the grievance forms are dated February 6, 2015 (when Plaintiff was housed in Division 6, Unit 1-H). In these grievances, Plaintiff complains about the presence of mice and other pests in the day room and his cell, extremely hot water in the

shower and missing tiles in his cell, and a lack of heat in his cell. (*Id.* 8–10). These grievances were received by a correctional rehabilitation worker (CRW) on February 9, 2015. (*Id.*).

Plaintiff also attached a second set of grievances, dated March 19, 2015, and marked as received by a CRW on March 27, 2015, reiterating the issues raised in his February 6, 2015 grievances. (Compl. 12–14). Plaintiff states in the grievances that he is resubmitting his complaints because he did not receive a response to the first set of grievances.[1] (*Id.*) .

At the time of the filing of this Complaint, the Jail had an administrative grievance process available to detainees and outlined in the Inmate Handbook. The Handbook states, in relevant part, that Inmate Request Forms should be submitted for items like basic supplies, law library services, or pre-stamped envelopes containing papers and pens. (*See* Dkt. 32-2, Cook County Department of Corrections (CCDOC) Inmate Information Handbook, at 20). An inmate grievance is described as a "formalized written complaint" that an inmate may file if, among other things, he believes his constitutional rights have been violated or his living area is "unsafe or unclean." (*Id.* 20–21).

The Inmate Handbook outlines the process of filing a grievance, including that an inmate must file a grievance within 15 days of the occurrence of the incident or problem about which he is grieving. (Inmate Handbook 21). The CCDOC then has

---

[1] As will be discussed herein, Plaintiff apparently received a response, but it appears to be his contention that no action was taken to address his grievances.

15 business days to respond to the grievance. (*Id.*). The inmate will receive a written decision, and is required to sign the grievance form acknowledging receipt. (*Id.*). If the inmate does not agree with the decision, he may file an appeal within 14 calendar days from receipt of the decision. (*Id.* 22).

According to the affidavit of John Mueller, CCDOC deputy director of inmate services, each grievance that a CRW receives may be processed either as a "nongrievance (request)" or as a "grievance." (Dkt. 32-2, Mueller Aff. at ¶ 9). If the inmate's complaint is processed as a nongrievance request and the inmate is unhappy with the result, he may file a second complaint that will automatically be classified and handled as a grievance. (*Id.*). Sheriff's Office General Order 24.14.5.0 provides, in relevant part, that "[i]nmate complaints documented on grievance forms may be classified as 'non-grievance requests' and are not assigned a control number, based on the nature of the issue, length of time since the issue occurred, except for allegations of sexual abuse, and the level of effort taken to resolve the issue. The determination will be made by an Inmate Services staff member." (Dkt. 32-2, Sheriff's Office General Order 24.14.5.0 § VII(E); *see* Mueller Aff. ¶ 5). Information about the grievance procedure is provided to inmates through the Inmate Handbook and the instructions on the grievance form itself. (Mueller Aff. ¶ 6). However, the Inmate Handbook does not contain any information about what inmates should do when they submit a grievance about a grievable issue, and it is processed as a nongrievance request. (*See* Inmate Handbook 20–22).

According to Mueller, when a CRW processes a complaint as a grievance, it is assigned a tracking number and recorded in the CCDOC's Master Grievance Log Book or the grievance database. (Mueller Aff. ¶¶ 10–11). Those records are kept in the ordinary course of business. (*Id.* ¶ 12).

Inmates may obtain grievance forms in the day rooms of their living units or from CRWs when the workers make their rounds. (Mueller Aff. ¶ 13). CRWs collect grievances once a day, five days a week. (*Id.* ¶ 14). According to Mueller, an inmate's location at the jail has no impact on the grievance process, and an inmate can file a grievance regarding conditions in a division even after he has been transferred to a new division. (*Id.* ¶ 15).

In regard to Plaintiff, Mueller states that he reviewed the Master Grievance Log Book and grievance database for the time period between October 23, 2014, and April 9, 2015, the approximate date of the filing of this Complaint. (Mueller Aff. ¶¶ 16–17). During this time, according to Mueller, jail officials processed one grievance and two nongrievance requests from Plaintiff. (*Id.* ¶ 18).

On January 5, 2015, Plaintiff submitted a grievance regarding funds not yet reflected on Plaintiff's account, which was processed as a nongrievance request, and which is not related to this case. (Mueller Aff. ¶¶ 19–20). Plaintiff also submitted the three grievance forms outlined above, regarding pests, the lack of heat in his cell, and the shower apparently being too hot. (*Id.* ¶ 21). Mueller states that these grievances also were processed as a nongrievance request, and Plaintiff received a response on March 27, 2015, which he signed. (*Id.* ¶¶ 21–22). That response indi-

cated that Plaintiff's concerns had been addressed, that pest control had been notified, and that engineers had made an adjustment to the shower and cell temperatures. (Dkt. 32, Ex. E at 4). The appeal portion of the response form is crossed out. (*Id.*).

On March 27, 2015, Plaintiff resubmitted the grievance forms related to the conditions of his confinement in Division 6 and received a control number. (Mueller Aff. ¶ 23). Plaintiff received two responses on May 7 and 12, 2015. (*Id.* ¶ 24). Plaintiff signed the responses. (*Id.*). There is no appeal on file for these grievances. (*Id.*). In the grievance responses, an official named Consolino (his job title is not provided) stated that Plaintiff's grievances regarding heat had been "reported to Facilities Management via work order for proper adjudication." (Dkt. 32, Ex. F at 8). In regard to the alleged pest problem, Lt. Kelly responded to Plaintiff by stating that "Pest Control and Facilities Management has been notified and we are working to address the issue." (*Id.* at 4).

According to the jail's records (and not disputed by Plaintiff), Plaintiff filed no grievances related to the living conditions in Division 2. (Mueller Aff. ¶ 25).

In his response to the pending motion, Plaintiff states that he did not exhaust his remedies as to his grievances regarding the conditions in Division 6 because he was told by Lt. Kelly and Consolino, the officers who responded to his grievances, that he could not appeal because he had moved out of the tier after filing the grievances. (Dkt. 34). This comports with Plaintiff's deposition testimony. (Dkt. 32-3 (Pl.'s Dep.) at 84). It is unclear when these conversations allegedly occurred, alt-

hough Plaintiff testified that his only conversations with Consolino and Kelly occurred when they returned Plaintiff's grievances to him. (*Id*. 87–89).

Plaintiff further states in his response to the motion that "it has come to my attention" that jail officials are "shuffling" inmates who complain about conditions on their tier, and that while the grievance responses indicate that grievances are being sent to Facilities Management for work orders, no work is being done. (Dkt. 34 at 1). Plaintiff's response does not address his apparent failure to file a grievance as to the conditions in Division 2.

## II. STANDARD OF REVIEW

Defendant does not label his motion as one either to dismiss or for summary judgment. However, as it relies on documents outside the pleadings (and Plaintiff's response also addresses matters outside the pleadings), the Court will treat it as a motion for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). The Court will not require the parties to file Rule 56.1 Statements of Material Fact, as the Court is able to resolve the motion based on the materials before it. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (a district court may forego the requirement that a Rule 56.1 Statement must accompany a motion for summary judgment).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Pursuant to the Prison Litigation Reform Act (PLRA), inmates who bring civil rights suits must first exhaust their administrative remedies within the prison system. 42 U.S.C. § 1997e(a). Failure to exhaust available remedies is an affirmative defense, and defendants bear the burden of proving such a failure. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

To fulfill this requirement, an inmate must comply with the procedures and deadlines established by the jail's policy. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (in order to properly exhaust his remedies, an "inmate must file a timely grievance utilizing the procedures and rules" of the facility's grievance process). The exhaustion of remedies is a precondition to filing suit; a prisoner's attempt to exhaust his administrative remedies after filing suit is insufficient. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The Seventh Circuit requires strict adherence to the exhaustion requirement. *See Dole*, 438 F.3d at 809. "[U]nless the prisoner completes the administrative pro-

cess by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is required to exhaust only those administrative remedies that are "available" to him. *See Harper v. Dart*, No. 14 C 1237, 2015 WL 3918944, at *3 (N.D. Ill. June 24, 2015) (Chang, J.) (citing 42 U.S.C. § 1997e(a)). In this regard, prisoners must exhaust only those procedures about which they have been informed, "meaning that only reasonably publicized procedures must be exhausted." *Id.* (citing *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015)). "That means that the jail's stated policy is the key; inmates 'are not required to divine the availability of other procedures.'" *Id.* (quoting *King*, 781 F.3d at 896). Further, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809; *see Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (administrative remedy was not available where the regulations did not clearly identify how a prisoner was to challenge his transfer to highest-security prison).

### III. ANALYSIS

In regard to Plaintiff's claims regarding alleged unconstitutional living conditions in Division 2, it is apparent from the record that Plaintiff did not file a grievance over those conditions. Plaintiff's response does not address his failure to file a grievance regarding the conditions in Division 2, or suggest that he was in any way impeded from filing a grievance about those conditions. "[I]f a prison has an inter-

nal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under Section 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). Because Plaintiff did not do so as to his claims regarding Division 2, these claims are dismissed without prejudice to Plaintiff re-filing after he has exhausted his remedies, if he is able to do so. *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005); *see Ford*, 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice") (emphasis in original).

As to Plaintiff's claims concerning Division 6, however, the Court finds that Defendant has not shown that Plaintiff failed to exhaust his administrative remedies. Defendant faults Plaintiff for filing a "premature" lawsuit by filing this action prior to receiving the grievance responses from Lt. Kelly and Consolino. Defendant also argues that these responses contained boxes allowing for an appeal, and these boxes were not crossed out, as they were on the response to Plaintiff's February 6, 2015 grievances. This means, Defendant contends, that the appeals process remained available to Plaintiff, and he was required to appeal before filing suit.

Because exhaustion is a precondition to filing suit, the key question is whether Plaintiff had exhausted his administrative remedies at the time he filed suit, on or about April 9, 2015.[2] Although the record is not entirely clear on this point, it ap-

---

[2] Plaintiff's complaint is dated April 9, 2015, and was received by the Court on April 15, 2015. Under the prisoner mailbox rule, a complaint is considered filed when it is submitted to correctional authorities for forwarding to the district court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

pears that any conversations Plaintiff had with Lt. Kelly or Consolino, in which they allegedly told him he could not appeal because he had moved to another tier, did not occur until they responded to Plaintiff's grievances in May 2015. Therefore, to the extent Plaintiff alleges that affirmative misconduct on their part rendered his administrative remedies unavailable, the Court finds this argument unavailing.

Nonetheless, the Court finds that Plaintiff's submission of his February 6, 2015 grievances, to which he received a response, was sufficient to exhaust his administrative remedies. Plaintiff acknowledges that he had access to the Inmate Handbook. (*See* Pl.'s Dep. at 97). The Inmate Handbook indicates that grievances may be filed for unsafe or unclean living conditions, and says nothing about these grievances being processed as requests. The grievance form itself states only that when a grievance is processed as a nongrievance request, the inmate "may re-submit the grievance issue after 15 days to obtain a 'Control Number' if there has been no response to the request or if the response is deemed unsatisfactory." (*See*, *e.g.*, Compl. 9). As other courts who have considered this issue have observed, the jail's stated procedures do not *require* inmates to resubmit grievances treated as requests after they have been denied or ignored. *See, e.g., Shelby v. Dart*, No. 14 C 0824, 2015 WL 8329971, at *6 (N.D. Ill. December 9, 2015) (Kendall, J.) (explaining that neither the Inmate Handbook nor the grievance forms themselves explain that refiling a complaint treated as a nongrievance request transforms the complaint into an appealable grievance); *Munoz v. Dawalibi*, No. 14 C 601, 2015 WL 719373, at *6 (N.D. Ill. Feb. 18, 2015) (Blakey, J.) (finding that inmate exhausted his administrative

remedies when he submitted two grievances and jail staff decided to handle them as requests, "in a manner outside the written grievance procedure").

In this instance, Plaintiff did resubmit his grievances after they were processed as requests. Arguably, Plaintiff knew that correctional officials expected him to resubmit the grievances in order to exhaust his administrative grievances. (*See* Pl.'s Dep. at 98 ("I know that the grievance procedure is to wait for a response. After the response, if you don't like it, to resubmit it. After you resubmit it, if the appeal part is not crossed out, you can appeal it. And you have to exhaust your administrative remedies before you do anything else.").

However, the availability of administrative remedies is not a subjective inquiry dependent on the knowledge of the inmate in question. *Harper*, 2015 WL 3918944, at *3 n.4; *see Twitty v. McCoskey*, 226 Fed. App'x 594, 596 (7th Cir. 2007) (holding that a prisoner's lack of awareness of a grievance procedure did not excuse noncompliance, and observing that the PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him") (citation omitted). Similarly, an inmate's awareness that the correctional facility has deviated from its stated procedures does not mean that the inmate must comply with an unwritten, and unclear, informal procedure. *See Harper*, 2015 WL 3918944, at *4, *7 (finding that where Inmate Handbook was silent about appealing requests and language on grievance form stated only that inmate "may" refile requests as grievances, inmate was not required to do so to exhaust his remedies); *see also Boyce v. Ill. Dep't of Corr.*, 661 F. App'x 441, 442 (7th Cir. 2016) ("We also have

emphasized that prison officials may not demand that an inmate do more than administrative rules require in order to avoid an exhaustion defense") (citing *Dole*, 438 F.3d at 809).

Here, Plaintiff complied with the stated administrative rules when he submitted grievances on February 6, 2015. He was not responsible for correctional officials' decision to process the grievances as requests or to cross out the appeal portion of the response form. Because the jail's stated policy (as expressed to Plaintiff through the Inmate Handbook) did not require him to resubmit his grievance in order to exhaust his remedies, the Court finds that the exhaustion process was completed on March 27, 2015, when Plaintiff received the response to his February 6, 2015, grievances. A hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) is unnecessary in this case because there are no disputed issues of fact which require further inquiry. Therefore, Plaintiff's claims as to Division 6 will proceed.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Ruling on Exhaustion Issue" [32] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims regarding Division 2 are dismissed without prejudice to Plaintiff re-filing after he has exhausted his remedies, if he is able to do so. However, the Court finds that Plaintiff exhausted his remedies regarding the alleged unconstitutional conditions in Division 6, and Plaintiff may proceed on this claim.

E N T E R:

Dated: February 21, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge